# July Term, 1852.

JOHN TRUEBODY, Appellant, *v.* H. M. JACOBSON, JEREMIAH CLARK, ALLAN T. WILSON, HARVEY SPARKS and DOMINGO GUZMAN, Respondents.

Although the prayer of a bill be inartificially framed, under the general prayer for relief, the Court may disregard the mistakes, and treat them as surplusage, and grant such relief as will conform to the bill.

The complaint as filed is substantially an original bill with new parties not involved in the judgment of the first suit.

After the purchase of the property by the plaintiff at sheriff's sale, he has a right to sue for his possession; and the discovery of a fraud after suit brought would entitle him so to shape his action as to include it, for the consideration of the Court.

Where there is enough in the verdict to ascertain the intention of the jury, the Court may instruct the jury to amend it as to form, not affecting the substance, so as to make it good in law, and it is error in the Court not to give effect to the verdict where such intention can be ascertained.

The lien which springs out of a title bond predicated upon the covenants for the purchase money, attaches upon the land, unless expressly reserved; and if such reservation be made, it lies upon the purchaser to show it.

And if the time for payment be extended beyond the period named in the bond, this does not release the lien.

Nor does taking a note for the purchase money affect the lien; and if part be paid the lien is good for the residue, and the vendee becomes a trustee for all that remains unpaid. So the lien attaching to the land, an assignment with or without notice, cannot affect the rights of the vendor.

It is not the vendee's duty to hunt up the assignees—they must look after their interest when the vendor sues for his money—the only protection is payment of the money—this alone will release the bond.

There is no privity between the vendor and the assignee of the vendee, unless it be by express stipulation.

The vendor or his assignee is not bound to know every assignee of the vendee however many.

An assignee where there is a lien cannot hold possession of the land against the vendor—he must pay or loose the possession—he cannot hold the land and money both.

The term within which payment may be made by the vendee to extinguish the lien, is limited, and ends after a sale under a judgment for the purchase-money.

An attorney at law took an assignment of a lot, upon which there was a lien for purchase-money, after suit brought against the assignee for recovery of the money. The attorney defended the suit throughout all its stages, without disclosing his claim. Judgment was rendered for the plaintiff, and all the right, title and interest of the defendant in the lot, was sold by the sheriff and purchased by the plaintiff. The attorney then set up his claim to the lot, then in possession of his tenant, refusing to pay rent in arrear, and denying that under the circumstances, any lien existed. In a new suit in which he was made a party, in view of these facts it was held, that his silence in relation to his own claim, throughout his connection with the former suit, was a fraudulent concealment; and he was decreed to deliver possession to the plaintiff, and pay all the costs of this and the former suits, and the rent in arrear from the date of the sheriff's sale.

THE bill in complaint sets forth that the plaintiff on the 12th of July, 1850, had instituted a suit in this Court against Domingo Guzman, —— Rosenwig, Lewis Lusk and Harvey Sparks, to recover the amount of a promissory note made by said Guzman to the plaintiff, for the sum of $6160.74, dated April 1st, 1850, and due ninety days after date, with interest at the rate of two per cent. per month, and to enforce the recovery of said note, by a sale of a certain lot, &c., then in possession of Lewis Lusk.

That a final judgment or decree was made in said suit on the 31st January, 1851, in favour of the plaintiff, for the sum of $7269.69, with costs, against said Guzman, to be paid within thirty days, or in default thereof, *all the right, title, and interest of the said Guzman in the said lot,* be sold to satisfy the same. And that John A. Trainor be appointed receiver, to collect the rents of said lot, &c.

That an execution issued under the said judgment, dated 4th March, 1851, and the interest of Guzman in the lot was levied and sold by the sheriff of San Francisco, on the 28th of March

to the plaintiff, Truebody, for the sum of $6900, to whom a deed was made by the sheriff, accordingly.

That in the final decree there was an omission of any provision to foreclose or bar the rights and interests of the parties in said suit to said lot, except Guzman's, and that by such omission, their rights were wholly unaffected by said judgment and proceedings thereon.

And that said Guzman had in fact no interest in the said lot, either at the time of the commencement of the said suit, judgment or sale; but all the equitable interest sought to be divested from him, had before any of the proceedings, been assigned by him, which fact was concealed.

That interest was this: on the 18th day of September, 1849, Edward E. Dunbar sold conditionally (as is evidenced by a writing usually called a *title bond*) said lot to Guzman, and Guzman, on the 29th of June, 1850, assigned his interest in said bond and lot to said Harvey Sparks, and he sometime after that assigned his interest to Allen T. Wilson and Jeremiah Clark, the defendants hereto. That Wilson and Clarke were the attorneys of the defendants in the said suit, at every stage of its progress; yet they never disclosed to the plaintiff that they had any claim or interest, or any pretence of any, in and to said lot, but carefully concealed that fact from him, while he was prosecuting the said suit to judgment and sale—that the better to delude the plaintiff, they were by themselves and their confederates present, bidding at said sale, as plaintiff believes. And plaintiff avers that such silence, &c., was unjust, and has resulted in grossly defrauding him, and for which he is entitled to relief.

That on the 8th of February, 1851, plaintiff filed a second complaint in this Court, in which Wilson, Clark and Jacobson are defendants; stating, that John A. Trainor, the receiver, appointed as stated above, had applied to the defendant, Jacobson, tenant of the property, for $400, rent due thereon, and that he refused to pay it, because he was the tenant of said Wilson and Clarke, and because they claimed to be the owners of it.

That the said Wilson and Clarke had been attorneys in the original case as stated herein, and had purchased with full notice of plaintiff's claim and estate therein, and praying a disclosure

from them as to the manner and time they acquired their interest therein, and that it might be made subject to plaintiff's right, &c. Jacobson appeared and stated that he was tenant of Wilson and Clarke ; who also appeared and alleged that they became the owners of said lot before the said first suit or any litigation was had about it. The Court refused to the plaintiff the right to amend.

The complaint then proceeds to state that the plaintiff's title to the lot was a conveyance from Edward E. Dunbar, who made the conditional sale to Guzman, by which deed plaintiff became invested with all the rights, estate and lien, that Dunbar had in the same ; and it was to enforce the payment of the purchase money for said lot, that the said first suit was instituted, and in which the omission, and silence and circumvention aforesaid occurred; and that the reason why the said note and judgment did not conform to the statement of the title bond in being payable to plaintiff, was that after he took a deed as aforesaid for said lot, Guzman after paying a portion of the purchase money executed in lieu of the note assigned to plaintiff by Dunbar, the note first mentioned and described herein.

And as there was no authority in the decree, under which the sale was made, authorizing the plaintiff to purchase the lot, and no confirmation of the said sale, the complaint alleges it was void.

The complaint then prays that the decree, judgment and sale, &c., in the first suit mentioned, be annulled, &c., and that plaintiff be reinstated in his rights as they existed at the time of the first suit, and that unless defendants or some of them pay the purchase money, &c., that then the same be ordered to be sold, &c., to satisfy the same; and that all the proceedings in said two suits be reviewed, &c., and such orders made herein as shall comport with justice, &c. ; and for an injunction to restrain defendants from receiving rents, and from incumbering, &c., the said lot; and for a receiver to be appointed to take possession and lease the same, &c.; and that if the sale does not satisfy all plaintiff's demands against the lot, that the rents, &c., be applied to the same, and for general relief.

Jacobson and Wilson demurred to the bill, which was over-

ruled, and then answered, denying concealment of the sale and assignment from Sparks to Wilson and Clarke, &c. ; and affirming that the lot is their property, and denying any estate in Truebody therein.

Wilson admitted that the demurrers and answers in the suits stated in the complaint, were made by him as attorney for defendants.

Clark answered, disclaiming all right, title or interest in the lot in question, or any possession by himself, his tenant or servant.

Wilson and Jacobson, in a subsequent answer, cited a judgment of this Court in the complaint filed 8 Feb'y, 1851, in which the Court decreed that the plaintiff had no right to the lot, which could be enforced against them, which judgment was unreversed and in full force.

The opinion of the Court exhibits at length the finding of the jury, and refers to the pleadings generally, so far as they are deemed necessary to a due explanation of the case.

The evidence offered on the part of the plaintiff, consisted of the records of the suits set forth in the complaint, which were objected to, but admitted; and the testimony of Dunbar and Sparks, together with the bond of conveyance from Dunbar to Guzman, the assignment endorsed thereon from Guzman to Sparks, and his assignment to Wilson and Clark ; and the assignment and conveyance from Dunbar to Truebody, of the debt due from Guzman to him, and his title to the lot ; which corresponded to the facts as stated in the complaint.

It was also in evidence that Guzman had paid $1000 on the contract, on payment of which he gave a new note to Truebody for the balance $6160.74, upon which the time of payment of the balance thus ascertained was extended ninety days from the 1st April, 1851.

The defendant offered no evidence.

After the verdict a motion was made in arrest of judgment, which was overruled.   A motion was then made for a new trial, pending which the complainant having presented a decree to the Court for their signature, to enforce the verdict; the Court refused to sign the same, or to render any decree whatever in favour of the complainant, and ordered that the complaint be dismissed.

18

From this decree the plaintiff appealed.

*Shalluck, Baine* and *Rabe,* for plaintiffs.
*Wilson,* for defendant.

For plaintiff it was argued that this was an original bill, in the nature of a bill of review.    1 Story's Eq. Plead. § 455.

1st. If the decree be allowed to stand, then defendant, Wilson, gets the property without pretending that he paid any consideration for it.    This is wrong in itself, and the claim inequitable and fraudulent.    6 How. S. C. R. 189.

2nd. We are entitled to a decree; for the answer does not set up that defendant is a *bona fide* purchaser for valuable consideration, without notice.    2 Peters, 209. 211. 212. 213. 207.

3rd. This being a *contract to convey,* on the performance of conditions, and not a conveyance of the legal title, the doctrine of the vendor's lien, has nothing to do with the case.    It is in the nature of a mortgage to secure the purchase-money, 10 Peters, 209.    2 Smedes & Marshall, 590; 4 Ib. 294.

We having the contract and the title to the estate, and the right to subject it to the payment of the purchase-money, every act done by the defendant tending to defeat the payment and destroy the title, is a fraud.    Wilson was attorney for defendants throughout the controversy.    He inquired of Dunbar into the situation of the title, before he took an assignment, and while. Sparks was in possession.    He refused to be sworn touching the point *where* the equitable title was.    And it is proved that Guzman was in possession at the date of the purchase, and up to January 28th, 1851; thus deluding the plaintiff by the possession, as well as by concealing the title.

At the time Wilson was making affidavits as Guzman's attorney, to set aside plaintiff's decrees and judgments, he himself was the owner of all the interest Guzman ever had in the property, and had been since 9th September before.

The sale was void under which Truebody bought, for want of confirmation by the Court.    Daniel's Ch. Prac. 1455.

Truebody's purchase was void for want of authority to bid, given by the Court.    Daniel's Chan. Prac. 1451.    Partedas, vol. 2. 1893.    Pract. Act. sect. 25, of 1850, as to *pendente lite* and remedies.

As to the sufficiency of the verdict, 1 Moran's Rep. 153. And what constitutes the record in a chancery cause in this country, and the difference of practice here and in England, 13 Peters's Rep. 6.

For plaintiff it was further argued :—

That this is an original suit alleging fraud, &c., and not a bill of review.

Fraud is cognisable in courts of law and equity, and the case termed a bill of review may be treated as an original suit charging fraudulent practices.   Bills of review are only granted upon two grounds; of error at law upon the face of the decree without leave of the Court, and upon newly discovered evidence; this case does not fall within either of the rules. Sto. Eq. Pleadings, § 4045.

The Court had power to revise its judgment at any time within a year, after it was rendered; sect. 68, Practice, Act of 1850; and this proceeding was commenced in May, 1851, before the Act of 1851 went into operation, which provides that all proceedings under the former Act should be saved.   See repealing sect. of Practice Act of 1851.

Viewed as an application under the 68th section, this Court had power to amend the judgment.   1st. To order the sale of the *land* and the interests of all parties claiming under Guzman, instead of his interest alone.   2d. That the purchaser be placed in possession.   3d. To amend the execution or return thereon, when it appeared by such return, that the whole amount of the judgment was bid for Guzman's interest alone, which as respondent contends had been previously disposed of, by ordering a resale of the land, or by awarding the return, and treating the sale as a sale of the land, and requiring the sheriff to give a deed for the land conveying the interest of Guzman and all claiming under him.   This the Court had power to do, as the other parties were affected with notice, and could derive no title from Guzman until the purchase money was paid.   The sale was therefore not such a sale as should have been made ; the purchase not such a purchase as was expected or intended by the parties ; and it is at this point that the respondent starts, claiming title by the omission of the Court, when in fact the sale, by its effects, ex-

cluded him from all interest, for the sale of Guzman's interest was the sale of Wilson's interest; but the Superior Court has not so declared, but should have so declared upon the application made, and this Court should so now declare.

Considering it as an original suit alleging fraud, consisting of the concealment by Wilson and Sparks of their title, at the date of the decree in January, 1851, and of the true position of Wilson while conducting the defence for Guzman in his own name as attorney, thereby misleading the Court and the plaintiff so as to induce the Court to believe that by ordering a sale of Guzman's interest, no adverse claim under Guzman could arise. To show these facts, it was proper to introduce the proceedings in the two former trials upon the issue of fraud, made by the pleadings, and submit them to the jury. There can be no doubt, that if the Court had known on the 31st January, 1851, the date of the original decree, that Wilson and Sparks claimed an interest in the lot, the matter would have been brought before the Court, and disposed of.

This is the case of an attorney conducting a suit for a defendant from its commencement to its final decree, settling the rights of the parties to a piece of land, declaring a lien in favour of the plaintiff and against the defendant, in which the attorney *after* the decree, asserts a title *against* the plaintiff, and *under* the defendant, acquired during the suit, from a party who stood affected with notice of the lien declared by the decree. Is this law or equity?

The jury having passed upon the facts, and the Court having overruled a motion in arrest of judgment, nothing was left to be done, but to enter up the decree in accordance with the verdict. And after the refusal to arrest the judgment, another judge, who succeeded to the bench, and who did not try the cause, had no authority, upon a new motion to dismiss the bill—and this upon a motion for a new trial, after the time for filing such motion had passed. Further:

The grounds upon which the bill was dismissed, so far as may be surmised, are the same as those presented in the demurrer to the complaint, and overruled by the Court, by a different judge, *several months* before the judge came upon the bench; who, by

his act, on motion, *revived*, but without a bill of revivor, the former proceedings.

There is a privity of estate, if not of contract, between the vendor and those purchasing with notice of the lien. 2 Story's Eq. Juris. sect. 1217, and 19. 15 Ves. 340. 7. 9.

The vendor's lien attaches until payment of the purchase-money, and the burden of proof is on the purchaser, to establish that it has been intentionally displaced, or waived by consent of the parties. If, under all the circumstances, it remains in doubt, then the lien attaches. 2 Story's Eq. 1224.

And even if a receipt of the purchase-money is endorsed on the face of the conveyance, and it is not in fact paid, the lien is not gone, but attaches against the vendee, and all persons claiming as volunteers, or with notice under him; and taking security, is but *prima facie* evidence of such intention. Ib. sect. 1226.

Wilson had notice of the vendor's lien, as Sparks took an assignment of the contract from Dunbar to Guzman, and assigned it to Clarke and Wilson, by indorsement. This paper showed on the face of it, that the purchase-money was not paid, and he could have been precluded from asserting such claim in the original suit; or the Court, from the facts presented in that suit, would have decreed against him, had his claim been before them. He does not strengthen his title by failing to disclose it then, and asserting it after the decree.

This lien was assignable, and the debt from Guzman was so assigned by Dunbar to Truebody upon valid consideration, and that debt was never satisfied—and Truebody did nothing to waive the lien thus assigned to him. Guzman waived all exceptions to the assignment by Dunbar to Truebody, by paying the $1000, and accepting from him an extension of time.

Upon an appeal the power of this Court is complete to review all orders affecting the first judgment, or to review, affirm, or modify the judgment appealed from; and may set aside, or confirm, or modify any or all of the proceedings subsequent to the same, or order a new trial. Pract. Act, sec. 367, p. 110.

In regard to the motion to dismiss the appeal, the record of February 3d and 4th of this Court, will show that the Court refused it on the part of Wilson, upon the same ground now urged as a reason why the appeal should not stand, based upon the

amended record of the Superior Court, namely, that the judgment appealed from was obtained by consent. The whole matter was heard in that motion, and is now renewed in another form.

For the respondent it was argued,

1st. That the Superior Court had no power or authority to entertain proceedings in the nature of a bill of review. Hagan *v.* King, decided in this Court, and Practice Act, 1850–51. Ours is a statutory practice in which the course is pointed out—one is by motion for new trial, the other by appeal .to another Court. A motion for a new trial must be made within four days after judgment. Elliott *v.* Osborne, et al. All the grounds urged in the complaint in this case, for interfering with the decree in the case of Truebody *v.* Guzman, Sparks, Rosenswig, and Lusk, are grounds embraced in the statute for relief by a motion for a new trial. 1 Johns. Cases, 495–6.

2d. The said Superior Court has no jurisdiction of the proceedings instituted in this case, even if it had jurisdiction to entertain a proceeding in the nature of a bill of review; it is filed without leave, and professes to be an original bill, and bill of review together.

To sustain this suit would be to declare that a judgment unreversed on the same point, between the same parties and privies, is no determination of the question. This suit is brought for the same thing as the suit of Truebody *v.* Guzman, Sparks, Rosenswig, and Lusk* was, and is between the same parties and privies, and that judgment stands unreversed and is not appealed from. If plaintiff can ride over that judgment, why not this, in the same way, and so *ad infinitum.* 1 Johns. Cases, 436. 491, and note *a*. This proceeding cannot be sustained under the statute of 1850, or the Prac. Act, 1851. The latter statute provides that "a judgment or order in a civil action may be reviewed as prescribed in this act, and not otherwise."

The Superior Court is a statutory Court, and has no other jurisdiction than that given by the act of its creation—"the same original jurisdiction in civil cases as is, or may be conferred on the District Court." A bill of review is nothing more or less than *a motion for a new trial* in a chancery suit. 1 Johns. Cases, 95–6. We have no chancery practice. Our practice in law and equity is the same, and any relief that a Court can give must be

* Reported p. 82.

sought in the manner prescribed by law: and this the law points out.

3d. All the grounds alleged for meddling with the decree are utterly frivolous and unmeaning. Plaintiff got his decree for the sale of all Guzman's interest in the land, leaving the interest of Sparks, Rosenswig, and Lusk, untouched, and this because he failed to show any interest in either of them in the land, and now they allege they are injured, because they did not know that Sparks had sold out to Clark and Wilson; and further ask the sale to be set aside. Now how could Truebody be injured by the sale of a claim, in which, or on which he had no rights? The decree in the case bound Clark and Wilson as much as if they had been parties. 1 Story's Eq. Jurisprudence, sec. 405.

4th. This proceeding seeks to blend two jurisdictions, to wit, *original and appellate.* It asks to have a former judgment reviewed upon a statement of alleged facts, as if it was an original suit; and it asks to have a former judgment reversed as if it was an appeal. No time in this case was asked, or granted, which is required in the case of a bill of review; nor no error of law appearing upon the face of the proceedings is alleged.

5th. Their allegation that the decree was obtained by fraud is an act of great effrontery. Who obtained it, plaintiff or defendant? Clark and Wilson as counsel for defendants opposed it— and yet they assert that defendants obtained it by fraud. How did, or how could the sale by Sparks to Clark and Wilson have shown, that before such sale Truebody had any estate, interest, or lien on the lands, as against Sparks? He failed to show it, because he had it not; or if he had it, and failed to show it, he had the opportunity, and is himself to blame. We were not bound to make out his case, nor Clark and Wilson to furnish evidence against their client, or themselves. Fraud consists in concealing what one is *bound legally to disclose,* or in alleging what is false. If he had shown a case against Sparks, and had got a decree, it would have bound us as well as him; and if he could not make out such case, the sale to us would not have helped him.

6th. The prayer for relief from the purchase at sheriff's sale evinces some hardihood. He charges fraud for not disclosing

our interest on the 28th March; and had stated and sworn on the
8th February, that we were in possession by our tenants; and
this shews too, that they thus forced the sale to execution long
after they knew of the sale of Sparks to us. We say further
that the Superior Court could make no order or decree in the
premises until Guzman is served, or appear. By the sale over
$6000 was applied to his benefit—and till he is brought into
Court, nothing can be done to affect him—not even favourably.
The reversal or setting aside of the sale would make Guzman
debtor to Truebody for the amount satisfied by the sale. That
the sale should be set aside so as to affect one privy and not an-
other, *is* absurd.

7th. The plaintiff failed to prove any one material allegation.
He did not show that Clark or Wilson concealed any fact from
Truebody. His evidence did not *tend* to make out the case
stated. The idea is absurd, that we concealed a fact from Tru-
body, because we did not interfere and plead it in a suit between
third persons, when it could not possibly have any bearing.

8th. Having got the very judgment which he finally prayed
for, he cannot appeal or complain. It would be a gross fraud
on us, if instead of making us defend a judgment we asked for,
he would put us in the position of defending one we never asked
for. If his complaint shows him entitled to any relief, what
right has he, when we deny his allegations, and take issue on
their truth, to make us stand in the position of admitting all
that he has alleged. All of the evidence given by the plaintiff,
was incompetent. 4 Wheat. 73; 18 Wend. 169; 2 Wend. 137,
and pages 145, 6, 7, 8. 17 Johns. 469.

In the course of his argument, the counsel for respondents
further urged, the opinion of the Court delivered in the previous
hearing. And that, as there was no order of Court refusing a
new trial, they could take no appeal. Nor could *we* (the defend-
ants,) appeal from an order dismissing the plaintiff's bill.

That there was no lien in favour of Dunbar or Truebody; the
sale under which they claim that the lien attached, was made
Sept., 1849, when the Mexican law prevailed, and under that law
no lien attached. Partides, p. 362. Story's Eq. secs. 1221.
1223, and notes.

The opinion of the Court was delivered by ANDERSON, Justice.

The record in this case shows that Truebody originally sold a lot in the city of San Francisco to Edward E. Dunbar. Dunbar sold the same to Domingo Guzman, for $10,500, and gave him a title bond, retaining the legal title in himself, on the condition, that at the payment of the money by Guzman, he would make to him a title in fee simple for the lot. At the time of this sale, the debt due from Dunbar to Truebody for the purchase-money, was unpaid, and subsequently Dunbar settled it, by transferring to him the debt of $7000, the balance due to him on the lot by Guzman; and by the same conveyance he sold and assigned to him, all the right, title, and interest which he had in the real estate mentioned in the bill.

On the 12th day of July, 1850, Truebody instituted a suit for the debt against Guzman and others, of whom Harvey Sparks as an assignee, was one. A decree was made in said suit against Guzman, and in favour of Truebody, on the 31st day of January, 1851, for $7267.67. Under this decree the sale of the lot was ordered, and was made for the sum of $6900, and purchased by Truebody. Jacobson, who was in possession of the lot, claimed to be the tenant of A. T. Wilson; and then, for the first time, it appears Truebody was informed that Wilson set up a right as the owner thereof, under an assignment from Sparks.

So a second suit was instituted by Truebody against ———— Jacobson, Jeremiah Clark and Allen T. Wilson. The bill of complaint amongst other things prayed, that Clark and Wilson should be ordered to answer on oath by what right they claimed any interest in the said property. The bill was sworn to by the complainants. Clark and Wilson answered, but not on oath, and stated that they purchased the lot before there was any controversy in relation to it. The record shows, however, that the first suit was commenced, on the 11th July, 1850, by Truebody, and that on the 9th of September following, Sparks made the assignment of the title bond to Clark and Wilson. Clark and Wilson were the attorneys for the defendant in that first suit. In the second suit the counsel for Truebody made a motion for leave to amend his bill. This was finally overruled on the 15th of May, 1851, and the suit ordered to be dismissed. On the

15th of May, Truebody filed the complaint in the present case, making Jacobson, Jeremiah Clark, Allen T. Wilson, Harvey Sparks, and Domingo Guzman parties.

The caption of the bill first denominates it an "original complaint;" also "a complaint and in the nature of a review."

The facts as recited in the bill are as now stated, and charge fraud upon the defendants; and particularly that Wilson acted as the attorney of Guzman, from the commencement of the first suit, and concealed the fact of his claiming to be the owner of the property under the assignment of Sparks; and that by this means the plaintiff had been circumvented, and thereby, up to that time, deprived of the benefit of the possession of the property.

The prayer of the bill in this case is most inartificially, and inaptly framed; asks for a review of the two cases referred to; a reversal of the judgment in the first case; and that the sale be vacated and set aside, and asks for several other specific modes of relief. The plaintiff also prays that the Court will put the purchaser in possession of the property, and for such other and further relief as he may in law and equity be entitled to. To this bill there was general demurrer, and overruled by the Court; and Jacobson and Allen T. Wilson answer over as to the merits, denying all fraud and concealment, and that any estate whatever in said property is held by Truebody. The case was finally tried before a jury in the Court below, on the 17th September, 1851. The jury returned a verdict in the following words.

"The jury find a general verdict for the plaintiff, according to "the complaint.

"The jury find that in the transfer of the property Dunbar "retained a lien upon the lot, which has never been satisfied.

"The jury find that at the sale a deception was practised upon "Truebody; that he bid and purchased through mistake of the "effect of the decree; that said sale is null and void."

The Court ordered the verdict to be recorded and the judgment entered accordingly.

The counsel for the defendant moved an arrest of judgment, which motion was heard and overruled.

On the 19th December, the Court below being differently constituted, the question of signing a decree to give effect to the

verdict being brought up for consideration, the Court refused to sign any whatever, arrested the judgment, and decreed that the complaint of the plaintiff be dismissed and that he take nothing by his bill.   From this decision the plaintiffs appealed.

This case has been made to assume a very complicated appearance, but under a strict scrutiny the legal truth of the whole matter is simple, and it is easy to reach the ends of justice conformably to the rules of law.

The complaint as filed is substantially an original bill, with new parties not heretofore involved in the judgment in the first suit.   It is unnecessary to advert to the various rulings in the Court below in the preceding cases.   It is sufficient to dispose of that which is at present before this Court.

As to the right of the plaintiff to maintain this action, under the circumstances, there is no question.   If left where he now stands, he would be utterly deprived of the rights to which he is justly entitled.   He has neither the money which was due to him, and which rested for its recovery upon the land, nor has he the possession of the land.   The form of suit by which this may be obtained is not prescribed.   He has filed a bill, charged fraud against the defendants, and stated the facts.   A trial and the verdict of a jury has been had in his favour, and the decision of the final Court below has been against him, and dismissing his bill.

It is true, and proper to be repeated here, that the counsel for the plaintiffs mistook the precise forms in which it would be most apt to have framed his bill of complaint and the specific objects of the prayer for relief.   Nor was it appropriate to call it a review.   It is properly an original bill, by which title it is first denominated.   Substantially it shows ample ground upon which to rest; and under the general prayer for relief, the Court may disregard the mistakes with which the specific propositions encumber the case.   They may be treated as surplusage, and such relief granted as will conform to the bill.   The law maxim maintains its force here.   *Utile per inutile non vitiatum*

When new parties in interest in this case became known to the plaintiff, it added strength to his right of a new action.   So when it became known that Allen T. Wilson set up a claim to the land to the exclusion of the judgment purchaser, who was

the complainant, and that he was the same individual who as counsel had conducted the first case for Guzman during the entire progress of the suit, under a concealment of any such claim, it formed a new combination of interests and parties, and the plaintiff might well put it forward as a fraud, an attempt to mislead the Court, and to circumvent the adverse party. If by this tortuous means any mistakes had been made, they could not deprive the plaintiff of anything, but on. the contrary, would rather create in him the right to maintain a new and original suit, by the joining of the names of the actors in the *suppressio veri*, with other parties to make his remedy perfect. After the purchase of the property by the plaintiff, the accession of his right to sue for his possession could not be denied, and the subsequent discovery of a fraud would entitle him so to shape his action as fully to include it for the particular consideration of the Court. In the absence of any statutory right in the plaintiff to any special form of suit, it is difficult to perceive what other view can be taken of this subject.

With this reasoning the plaintiff is rightly in Court; and the Court below erred in the final decree, by refusing to give effect to the verdict of the jury, and by arresting the judgment, and by ordering the suit to be dismissed. This was all done without the assignment of a single reason. The verdict, it is true, is peculiar in some respects. The decree is not less so. There is enough in the verdict as rendered to have enabled the Court to ascertain the intention of the jury, and it ought to have been supported. It was competent to the Court to instruct the jury to amend their verdict as to form, not affecting the substance, and in such manner as to be unexceptionable in law. That not having been done, the Court below ought to have conformed its judgment to the obvious intention of the jury. That could not have been mistaken. Nor is there any thing in the prayer of the bill, which should have prevented the Court from giving effect to the verdict by such a decree as was just. If the plaintiff in his prayer mistook the special relief for which he should have asked, the Court could have granted that to which he had a right consistent with the bill under the prayer for general relief. Story's Eq. Plead. § 40, and so on. Hill's Chan. Rep. 302. Brown and

Others *v.* McDonald, Wend. Rep. Baily *v.* Burton, p. 353. Johns. Chan. Rep. Wilkin *v.* Wilkin, 116, 117.

A wise and conservative policy has doubtless given occasion to the sound and excellent rule of law, by which appellate Courts have been guided in preferring to effectuate the ends of justice, where it has been practicable to do so by concluding the case, rather than to apply the strictest technicalities, and to send the parties back to the certainty of accumulated costs and injurious delays. In this we may find the reason for the doctrine which has obtained as to verdicts defective in form, or incumbered with surplusage, and bills of complaint, which are not less at fault in the objects of special relief asked for, but are saved by the prayer for general relief, to which the parties have a right.

Assuming the conclusion, which is true in law that the plaintiff already held, under the judgment and sale, the legal and the equitable right to the land, the latter having merged in the former yet having been stopped short of the consummation of that right, by the attempted fraud of Jacobson and Wilson, and prevented by them from entering upon the peaceable possession of his property, the Court is bound to afford him a remedy against that fraud.

The verdict of the jury is a response to the issues actually made in the pleadings. Whether the Court ought to have reserved certain legal questions, and ordered the issue of certain facts alone submitted, it is now too late to inquire. However this may be, the power of the Court could not be curtailed by the result. The jury found enough to have justified the Court to refuse to arrest the judgment on the final motion, to have decreed in favour of the plaintiff, and to have ordered for him a writ of possession, and a proper account of rents.

For the first time in the progress of the general litigation as to this property, the question of fraud was brought by this case to the consideration of the Court, and with all the facts fully in view, it would be contrary to every principle of equity to postpone the plaintiff to a new and protracted law suit. It is clearly not the policy of this Court to encourage the delays of justice or the complication of litigation, and least of all where there is reason to believe, there has been a deliberate purpose of fraud. If we were to do so, the functions for which this Court have been

created would fail, and the public confidence would justly withdraw from our decisions, and all men might well fear for the security of their rights.

It has been contended on the part of the counsel for the defendants, that there was no lien in this case, on the part of the plaintiff, upon the lot. ·This is not the law. The lien which springs out of the title bond predicated upon the covenants for the purchase-money, attaches to the land, unless expressly reserved; and if such reservation be made, it lies upon the purchaser to show that the vendor agreed to rest on other security. Nor is it sound law, as contended for, that the extension of time granted for the purchase-money released the lien, if any ever existed. The contrary is true. Taking a note for the purchase-money, does not affect the vendor's lien, and even if part be paid, the lien is good as to the residue, and the vendee becomes a trustee as to all that remains unpaid. So the lien attaching to the land, no assignments, with or without notice, can affect the rights of the vendor. It is not his duty to hunt up the assignees. The bond having passed through all the forms and requirements of law, is notice to the world, and those who have any equity by assignment, must look after it when the vendor sues for his money. The only protection they can have, is to proceed from the payment of the money. That alone will release the land. There can be no privity of contract between the vendor and the assignee of the vendee, as a mere legal consequence of the assignment, unless it be by express stipulation. But the vendor, or the assignee of the rights and claim of the vendor, is not bound to know every assignee of the vendee, though they were a hundred.

The true ground, however, for the interposition of this Court is, that the attempt at fraud in this case is manifest by the whole tenor of its history, and by the concealment which was practised by Wilson, and the actual obstruction of the plaintiff to obtain possession, and that he has a right to that remedy. 1 Johns. Chan. Rep. 309, Gorden v. Green.

It is a clear principle of equity, that an assignee cannot keep possession of land subject to a lien for purchase-money, and also refuse the purchase-money. If he holds the one, he must pay the other. The plaintiff cannot be deprived alike of possession

and of money. If any exception exists in regard to this, it must be upon some special equity, founded upon a specific agreement. The general rule is, that he must either pay the money or lose possession, accounting for rents and profits, from the date of the accession of full title in the purchaser under judgment. If he holds as an assignee under the original vendee, he has taken it, leaving the land subject, without any change whatever, to the claim of the vendor.

As a further answer to the objection, that there is no lien created by the title bond, in this case, it is sufficient to state, that not only does the vendor become the trustee of the vendee, but both the vendor and the vendee, in the legal nature of their privity, become trustees of each other, and the trust attaches to the land.

No privity exists, however, between the vendor and the assignee of the vendee, and therefore the legal consequence is, that there is no assignment or lease which can affect or obstruct the progress of the lien. Whatever is done after the contract, the signing and sealing of the bond, either by assignment or leasing, is wholly controlled by the power of the lien, and falls whenever it comes into conflict with it. The interest of the assignee can only be saved by the payment of the purchase-money at the right time. That time ends after the land has been subjected to sale under a judgment for the purchase-money. 1 Barbour's Rep. 495, Swartwout *v.* Burr; 15 Vesey's Jur. Rep. 317, Contract and notes.

Therefore as this case now stands, the assignees have lost even their equity. It passed away with the sale. They have tampered too long with justice. The equitable title to the land is now merged in the legal. The judgment and the sale under the first suit are good, and the title is in the person of the plaintiff.

The question now is one of the right of possession and title, and whether the Court will give effect to the verdict of the jury, and by its decision do that which the Court below ought to have done.

In conformity to the principles of this opinion, the Court consider that the final decree of the 19th December, 1851, in the Court below from which this appeal is taken, arresting the judgment as first entered on the 17th September, 1851, and dismiss-

ing the suit, ought to be reversed, and the same is hereby reversed; and that the judgment first entered at the trial of this cause, in favour of the plaintiff, on the 17th September, 1851, ought to be so modified as to be conformable to law, and so as to do full justice to the parties.

Whereupon the Court order, adjudge and decree, that the entire legal and equitable title to the lot of ground and premises described in the said complaint, to wit: A certain lot of ground situated in the city of San Francisco, being twenty-three feet front on Washington street, and forty feet in depth, and commencing on the easterly side of the Arcade, so called, and running southerly forty feet, thence easterly twenty-three feet, thence northerly forty feet, thence westerly twenty-three feet on Washington street, to the place of beginning, and the appurtenances thereunto belonging, is and has been, since the date of the sheriff's sale to said complainant on the 28th of March, 1851, and the sheriff's deed thereupon, vested in the said complainant; and that neither the said Guzman, the said Sparks, the said Clarke, nor the said Wilson, the said Jacobson, nor any person claiming under them or either of them, has now or has had, since the day of said sale and conveyance, any right, title or interest in or to said lot of ground, or the said premises. And this Court do further order, adjudge and decree that the possession of the said lot of land be delivered up to the said complainant, and that a writ of possession be awarded, and the same is hereby ordered to be issued in favour of the plaintiff, by the Court below, directed to the Sheriff of the County of San Francisco, commanding him to place the plaintiff in the possession of the entire lot of land as above described in this decree.

And as Allen T. Wilson held possession of the lot by his tenant, and set up to be the owner of said lot, and has been the prime source of this litigation, and to whose benefit as the possessor the rents accrued, it is ordered, adjudged and decreed, that this cause be remanded to the Court below, with directions to that Court to cause an account in favour of the plaintiff, to be taken of the rents, profits and issues of the said lot, from the date of the sheriff's sale as aforesaid, down to the time of the delivery of the possession of said lot to the plaintiff as hereby decreed; and that judgment be entered up in said Court in favour

of said complainant, and against said Allen T. Wilson, and execution issue thereon for the amount ascertained to be due, and the amount of said rents, when so collected by the sheriff, to be paid over by him to the said complainant, Truebody.

And it is further ordered, adjudged and decreed, that the said Allen T. Wilson pay all the costs of this suit, both in this Court and the Court below, and that the complainant recover back from the said Wilson all costs paid by him in this suit, and that he have execution therefor against the said Wilson.