WILLSON, Appellant, v. TRUEBODY, Respondent.

## No. 205; November 13, 1865.

**Judgment—Res Judicata.**—Where There are Two Judgments in Different Suits, commenced at different times, between the same parties, involving the same subject matter, and determining the same points in different ways, the party prevailing in the first suit will be estopped by the judgment in the last; this judgment can operate as an estoppel, however, only upon those matters which were necessarily determined.

**Ejectment.**—A Plaintiff in Ejectment must Recover, if at All, only on the strength of his own title; and if he fails to show a right of possession in himself, it matters not whether the defendant has title or not.

**Vendor and Vendee—Transfer by Obligee in Bond to Convey.**—Where it appears, in a transaction relating to land, that the title was intended to remain in the obligor and that the instrument is merely a bond to convey when payments are made according to the conditions, the obligee can meantime transfer to a third person nothing but a right to be given a deed upon payment in full.

**Deed to Clear Title—Validity.**—When One Yields a Large Consideration in Rents, damages and costs for the purpose of clearing up his title, the deed, in the transaction, from the recipient of the consideration is not to be regarded as ineffective for the purpose merely because the subject matter is described as "a claim against the lot."

SAWYER, J.—This is an action to recover a lot on the corner of Washington street and Dunbar alley in San Francisco. The plaintiff's title is put in issue by the answer, and defendant also sets up title in himself.

On the twelfth day of June, 1849, the defendant Truebody—at that time the owner in fee—conveyed the lot in question to Edward E. Dunbar. Said Dunbar on the 18th of September, 1849, executed under seal a bond in the sum of twenty thousand dollars to one Domingo Guzman, "upon the following conditions, to wit: Whereas: I have this day sold unto the said Domingo Guzman a certain lot [describing lot in question] for the sum of ten thousand dollars to be paid as follows: [specifying the amount and time of payment of the several installments.] Now, therefore, if the said Domingo Guzman do pay, etc. . . . . in the manner and times aforesaid, etc., . . . . the said Dunbar hereby agrees to give him

a warranty deed for the above-described premises and upon the giving of such deed this instrument to be void, etc.''; and let Guzman into possession under said bond, the first installment being payable, and, it is presumed, paid at the time of the execution of the instrument. On the 15th of November, 1849, the said Dunbar, by deed of that date, reciting that there was some seven thousand dollars purchase money still due from Guzman, assigned the said demand for purchase money, and conveyed all the right, title and interest of said Dunbar in and to said lot to said defendant, Truebody. On the 1st of April, 1850, said defendant, Truebody, and said Guzman accounted together concerning said purchase money, finding something upward of six thousand dollars still due, and upon said accounting said Guzman gave said Truebody his note for the amount found due, payable in ninety days, and on the giving of said note said Truebody indorsed upon said bond for deed in the possession of Guzman an agreement to extend the time of payment of said balance ninety days, reciting that the giving of said note was for balance of purchase money, and that said extension was in consideration of the giving of said note. On the 29th of June, 1850, the said Guzman, being still in the possession of the lot, by an instrument in writing under seal indorsed on said bond for deed, assigned, transferred and set over to Harvey Sparks all his right, title and interest in and to said bond, ''and the property therein mentioned, together with all covenants and privileges therein expressed,'' and ''delivered a possession of part of said land to said Sparks.'' Guzman and Sparks continued in possession by their tenants till September 9, 1850, on which day ''said Sparks'' indorsed on said bond an instrument in all respects similar to the last, in favor of Allen T. Willson and Jeremiah Clarke, and delivered possession of said lot to said Willson and Clarke, who continued in possession till April 22, 1851, on which day said Clarke executed a similar instrument in favor of said Willson, and delivered the 'exclusive possession of said lot to said Willson. None of these instruments were acknowledged or recorded. By an agreement in 1849—but whether verbal or in writing does not appear—between said A. T. Willson and a brother, sons of plaintiff, said brother bound himself and promised to pay and secure to the plaintiff as

much money, or money's worth, as said Allen T. Willson should give, convey or secure to her. In consideration of this promise of his said brother, said Allen T. Willson, on the 29th of October, 1851, executed a conveyance of the lot in question to plaintiff, and transmitted it by mail to her in New York, where she then and has ever since resided. In 1853, when said Allen T. was on a visit to his mother, the said plaintiff in New York, she handed the said deed to him to be brought back to California and recorded, where it was, some seven years afterward on the seventeenth day of April, 1860, recorded in the proper office. Under this deed plaintiff claims title.

On the twelfth day of July, 1850, said Truebody brought suit in the superior court of the city of San Francisco against said Guzman and Sparks, who were then in joint possession by their tenants by filing complaint, in which he set up the before-mentioned purchase by Guzman, and the subsequent transactions above stated down to and including the transfer to Sparks, and the tenancy under Guzman and Sparks of the other defendants, and praying a judgment for the amount of purchase money still due—then amounting to some seven thousand dollars—and for a sale of the lot and payment out of the proceeds. The defendants appeared and answered, said Willson and Clarke appearing and conducting the defense as their attorneys. On the 31st of January a judgment was entered for the amount due, and directing, in default of payment within thirty days, that all the right, title and interest of said Guzman in law and equity in said lot be sold by the sheriff, and for payment out of the proceeds. The lot was afterward sold by the sheriff under the judgment, March 28, 1851, to said Truebody for six thousand nine hundred dollars, said Willson and Clarke being present and bidding at the sale, but at that time giving no notice of any claim of their own. The sheriff executed a deed in pursuance of the sale dated March 29, 1851, which deed was duly acknowledged on the 5th and duly recorded on the 17th of April, 1851.

On the 15th of May, 1851, said Truebody instituted another action against one Jacobson (a tenant of said Willson), said Willson, Clarke, Sparks and Guzman, in which he set out the former proceedings in the case of Truebody v. Guzman et al.,

the decree, sale, etc., the said assignment of Sparks to Willson and Clarke, and charging a fraudulent concealment of their claim by them, and averring the tenancy of Jacobson; and on the supposition that the former proceedings did not devest the equities of Sparks because the decree contained no specific provisions to that effect, asked that the judgment and proceedings thereon might be vacated, and for a new judgment and sale, and such other relief as the facts would justify. The cause having been tried before a jury, "a general verdict for plaintiff according to the complaint" was found. The jury also found among other things that "at the sale a deception was practiced on Truebody." Upon the pleadings, evidence and verdict the court dismissed the complaint, and plaintiff Truebody appealed. On appeal the late supreme court held that, on the facts of the case, the plaintiff, under his former decree, sale and conveyance, acquired a perfect title, and adjudged "that the entire legal and equitable title to the lot of ground and premises described in said complaint, to wit: [describing it] and the appurtenances thereunto belonging, is, and has been, since the date of the sheriff's sale to said complainant on the 28th day of March, 1851, and the sheriff's deed thereupon vested in the said complainant; and that neither the said Guzman, the said Sparks, the said Clarke, nor the said Willson, the said Jacobson, nor any other person claiming under them, has now, nor has had since the day of said sale and conveyance any right, title or interest in or to said lot of ground or said premises." It further adjudged that said premises be delivered up to the complainant and that a writ of possession be awarded. It was also ordered and adjudged that said defendant, Willson, the party holding possession and claiming title, account for the rents, issues and profits, and pay the costs of the litigation. On filing the remittitur in the court below, a writ was issued in pursuance of the said judgment, and the sheriff, in pursuance thereof, on the tenth day of September, 1852, put defendant, Truebody, in possession, and he has ever since continued in possession.

On the tenth day of November, 1852, the said Allen T. Willson executed in favor of said defendant Truebody a deed, whereby in consideration of the release by said Truebody "of all claims for damages and costs, rents and profits,

under the decree in the case of John Truebody v. H. M. Jacobson and Allen T. Willson" last above mentioned, he quitclaimed all his interest in a small lot in the rear of the lot in question and did "further release unto the said party of the second part (Truebody) all claims of the said party of the first part (Willson) against the lot" in question. This deed was duly recorded in the proper office on the 11th of November, 1852.

On the nineteenth day of July, 1851, the said Allen T. Willson instituted a suit in the superior court of the city of San Francisco, against said defendant Truebody, under the two hundred and fifty-fourth section of the Practice Act of 1851, by filing complaint, in which he avers that he "is the owner and in possession of" the lot in question; "that the said defendant claims an estate or an interest therein adverse to the said plaintiff, which said claim is without foundation," and asks that judgment may be pronounced that defendant has no such estate or interest therein. Defendant answered, and the court held, that the answer denied no material issue of the complaint, and adjudged that defendant, Truebody, "has no estate or interest in, nor lien, nor encumbrance on the lot of land described in the complaint," and that plaintiff recover his costs. This is the entire point adjudged in terms.

The monthly rent since September 10, 1852, is two hundred dollars. Defendant Truebody has put improvements to the value of sixteen thousand one hundred and twenty-five dollars on the lot. There are some other facts found not necessary to notice. On the facts found the district court was of the opinion that plaintiff was not entitled to recover, and judgment was entered for defendant.

The plaintiff's counsel insists that defendant is estopped by the judgment in the last-mentioned case of Willson v. Truebody from inquiring into the state of the title anterior to the date of the filing of the complaint in that suit; and that he cannot avail himself of the judgment in Truebody v. Jacobson et al., set up by way of estoppel in his answer. We are inclined to think that, where there are two judgments in different suits, commenced at different times, between the same parties involving the same subject matter, and determining the same points in different ways, that the party pre-

vailing in the first suit will be estopped by the judgment in the last. It was so held in Cooley v. Brayton, 16 Iowa, 17. But it is unnecessary to determine the question now, for, under our view of this case, conceding this to be so, and that the judgment is presented in the record in such a way as to be available to the plaintiff, still the questions adjudicated are insufficient to authorize a recovery. The judgment can operate as an estoppel only upon those matters which were necessarily determined. Now, in the case of Willson v. Truebody, Willson's title was not determined, as the judgment distinctly shows. The plaintiff Willson avers in his complaint "that he is the owner and in possession" of the lot. The defendant Truebody answers "that the plaintiff is not the owner of the lot as he states in his complaint, and this he prays may be inquired of by the court." There is a direct issue on the ownership, or, to give the allegation the most extended signification, the title of Willson, and this is the only issue made on the allegations of the complaint. The court in the inducement to the judgment recites that, "all and singular the premises being considered and understood, it appears to the court now here that the answer filed in this cause, and the matters and things therein alleged presents no material issue of facts triable before the court or jury, and do not, and would not if true and fully proved and established, bar or preclude the said plaintiff having and maintaining his said action, nor be any legal cause why the judgment and decree prayed for in the complaint in this cause should not be rendered. Wherefore, etc., . . . . it is considered, ordered, adjudged and decreed, that said John Truebody has no estate or interest in, nor lien nor encumbrance on, the lot," etc., saying nothing at all about Willson's title.

The court here determined that it was immaterial to inquire whether Willson had title or not, and refused to try that issue. Section 254 of the Practice Act under which the action was brought provides that it "may be brought by any person in possession, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate or interest," not the claim or title of the person in possession. The judge who tried the case held that it was enough that Willson was actually in possession, whether he had any right there or not,

and that Truebody out of possession set up some claim without foundation, and whether the court was right or not in this construction of the law, these were the only questions determined, and the only points upon which the judgment can operate as an estoppel.

But subsequently, Willson was turned out, and Truebody put in possession under process issued in pursuance of the judgment of the supreme court in favor of the latter against the former in a suit commenced before said suit of Willson v. Truebody. Willson's possession was thereby rightfully terminated, and Truebody came properly into possession, and he has remained in possession ever since. The plaintiff must recover, if at all, upon the strength of her own title, and if she fails to show a right of possession in herself, it matters not whether Truebody has any title or not. If neither party had title the defendant must prevail. Plaintiff has no title unless she acquired a title from said A. T. Willson through the before-mentioned deed of October 29, 1851, and as Willson's title was not determined by the said judgment in the case of Willson v. Truebody, her title can derive no support by way of estoppel from that judgment. We are, therefore, thrown back upon the question as to whether Willson did in fact have any title at the time he conveyed to his mother, the present plaintiff.

If said Willson had any title at all, he had it at the time said suit of Truebody v. Jacobson et al. was commenced, May 15, 1851, for he is not shown to have acquired any title since that time. But as we have already seen, it was in that case finally adjudged and decreed "that the legal and equitable title to the lot" in question was, and had been "since the date of the sheriff's sale to the complainant (Truebody) on the 28th of March, 1851, and the sheriff's deed thereupon vested in the said complainant (Truebody, defendant herein), and that neither the said Guzman, the said Sparks, the said Clarke, nor the said Willson, the said Jacobson nor any other person claiming under them, has now, had then, nor had since the day of said sale and conveyance any right, title or interest in or to said lot of ground or said premises." It is here adjudged in express terms, not only that at the commencement of that suit Willson had not, but that Truebody had, the title.

It may be that Truebody parted with his title to a third party subsequent to the commencement of this suit and prior to the commencement of the said suit to determine Truebody's adverse claim by Willson against Truebody, so that, at the time of the institution of the latter suit neither Willson nor Truebody had title. If so there is no inconsistency whatever between the two judgments, and it only appears from the two records taken together—nothing further having been shown,—that at the time of the institution of the last suit neither party had title.

It is contended on behalf of appellant that she is not estopped by this determination in Truebody v. Willson and Jacobson to assert title in Willson, and deny title in Truebody at the date of the commencement of the suit; but if estopped that the matter of estoppel is not well pleaded and for that reason not available. We do not now perceive any good ground for not holding this determination conclusive as to the rights of Willson and Truebody at that time. The facts were fully presented in the complaint and put in issue by the pleadings, and found according to the allegations of the complaint. It is true the plaintiff supposed that upon the facts he had no title, and his prayer for specific relief was based upon that idea, but he also prayed such other relief as in equity he might be entitled to upon the facts. The supreme court on appeal held that he was mistaken in supposing that he took no title by the previous proceedings, and that he did acquire a perfect title, both legal and equitable; that Willson had none and so expressly adjudged. The court had jurisdiction of the appeal—of the subject matter. It had the facts before it in the record and determined the matter, and, as a part of the relief granted, adjudged where the title lay. In some particulars we are not prepared to say that the court did not take a short cut to the goal of justice, nor are we prepared to say that they did not reach the goal by the path pursued.

There is a question made upon the authority of the court to reverse or modify a judgment of a lower court entered by consent. The judgment-roll did not show a judgment by consent. The question whether it was by consent or not was raised on affidavits and presented by a bill of exceptions. The court having jurisdiction of the appeal, and jurisdiction

to determine whether there was a judgment by consent, or such a judgment as would for any reason justify a reversal, determined that question, and whether erroneous or not we have no jurisdiction in this proceeding to review its action. We are of opinion, however, that it was not a judgment by consent in the sense claimed. But conceding that these matters are not well pleaded or for any reason are not available in this action by way of estoppel, still the decisions in Truebody v. Jacobson et al. are authorities that on the precise state of facts presented by this record, Willson, on the 15th of May, 1851, had no title, and that Truebody had; and unless overruled they must control the decision of this case as authorities. The first decision was rendered at the January term, 1852, in which the court say: "The purchase of the property mentioned in the bill by the plaintiff from Dunbar gave him the legal title. His purchase at the sale, made under the decree rendered in the action which is referred to in the bill, invested him with the equity. So that, as appears from his own averments, he has a complete investiture of the legal and equitable title, as fully as it could be derived from Dunbar, the first owner" (2 Cal. 85), and on this ground the court denies the plaintiff any relief because he does not require any. A rehearing was granted, the cause elaborately reargued, and it was again held that Truebody took title discharged of the vendee's equities under the sale on the prior judgment, and the court, instead of turning the plaintiff out of court, on the ground that he required no relief, gave effect to their opinion by entering a judgment granting relief in accordance with the points determined: 2 Cal. 288. The facts now shown by the record in this case affecting the question in no respect differ from the facts appearing in that case.

Of course, if Willson had no title, his mother, the present plaintiff, took none by his conveyance, and on this view, the question of notice of lis pendens raised has no application. Truebody's conveyance under the sheriff's sale was on record at the time of the conveyance to her. Without regard to the doctrine of res adjudicata the same result must follow upon the same state of facts.

Without relying upon Truebody v. Jacobson as authority, or upon res adjudicata, as an original question, in our judgment, the legal title never passed to Guzman. The authority

cited from the civil law by appellant's counsel has no application to the question under consideration. It refers to points wherein the law supplies the rule, where no specific provision is made, or intent of the parties manifested in the contract itself. The question is, not what contract the law made for the parties when they omitted to manifest their intention by express provisions, but what contract did they make for themselves. The civil law was undoubtedly in force at the time the contract was made. But when the contract itself is lawful, the civil law, as well as the common law, gave effect to the contract made as manifested in the stipulation of the parties.

In Domat's Civil Law—an authority cited by appellant—it is said: "The contract of sale, as all other contracts, forms three sorts of engagements. The first is of those which are expressed in the contract; the second, of those which are the natural consequences of the sale, although the contract makes no mention of them; and the third is of such engagements as the laws, customs and usages of the country have established. The first of these three sorts of engagements reaches to all the particular covenants, and to all the different pacts, which may be added to the contract of sale, such as conditions, clauses of nullity in default of payment, the right of redemption, and others of the like nature. The second sort of engagements, which are the natural consequences of the contract of sale, comprehends those under which the seller may be to the buyer, and the buyer to the seller, although the contract makes no mention of them. These engagements oblige the parties in the same manner as the contract itself, of which they are consequences": 1 Dom. Civil Law by Cushing, 198, pt. 1, bk. 1, tit. 2, sec. 1, arts. 5-7. And again (Id., p. 217, sec. 6, art. 1): "We may add to the contract of sale, as well as to all other contracts, all manner of covenants and pactions that are lawful, such as conditions, clauses of nullity, a power of redemption and others."

From these citations it appears that where the contract is silent the law itself supplies certain conditions, but that such lawful special covenants may be made, enlarging or restricting the rights of the parties, as their interests may seem to dictate. And in construing a contract the object must be to ascertain from its provisions the intent of the parties, and to

give effect to that intent. The rule of construction under the same law is: "If the words of a covenant appear to be contrary to the intention of the contractors, which is otherwise evident, we must follow this intention, rather than the words": Id., p. 168, tit. 1, sec. 2, art. 11. Now, in the light of these principles, what is the intention of the parties with respect to transmitting the title manifested by the bond from Dunbar to Guzman? It is to be remarked that the instrument is one in form and the language used not known to the civil law. It is manifestly a common-law instrument, both in form, and the language employed. But the language used and form adopted were only used for the purpose of expressing the intent—the contract of the parties; and we must read it for the purpose only of ascertaining that intent, and when ascertained the law then in force would give effect to such intent. Had the instrument been executed in any state where the common law prevails, there could not be a question that no intent is manifested to transfer the title by the instrument. Clearly, it would appear that the title was intended to remain in the obligor, and that the instrument is simply a bond to convey the title when the payments are made according to the conditions. And this intent is manifest from the language of the instrument. The parties have used a form of contract well known in common-law countries, and not employed in contracts under the civil law, and must be presumed to have intended that it should be construed in the same manner it would be where ordinarily used. It is claimed that the agreement "to give a warranty deed" was not intended as an agreement to convey, but only to warrant a title already passed. If this were so, it amounted to nothing, as under the civil law the general warranty was attached to every sale by the law itself, unless there was a special restriction, and Guzman already had by the sale all that the conditions called for, and there was no occasion for any further assurance.

Says Domat: "Warranty in law, or natural warranty, is the security which every seller is bound to give for maintaining the buyer in the free possession and enjoyment of the thing sold; and for putting a stop to evictions, and other troubles that shall be given to the buyer by any person whatsoever, who shall pretend either a right of property or any other

right in the thing sold, by which the right which ought naturally to be acquired by the sale would be diminished. And the seller is obliged to this warranty although it be not stipulated by covenant. Warranty by deed, or covenant, is the security which the seller promises, either greater or lesser than what he is bound to by law, according as the parties have agreed between themselves. Thus, they may add to the warranty in law; as if it be agreed that the seller should warrant the buyer against the act of the sovereign. And they may likewise restrain the warranty in law; as if it be agreed that the seller should only warrant against his own proper act, and not against the rights of other persons, or that he shall only restore the price in case of eviction, and not the damages. And all these agreements have their justice, in that the buyers purchase at a cheaper or dearer rate, or upon other views; and in that the purchaser buys in effect only what is sold, and such as the seller is willing to warrant".: Id., 231, tit. 2, sec. 10, arts. 6, 7.

There is no agreement in this instrument for a special warranty enlarging or restricting the ordinary general warranty, which, under the law, every sale carried with it without express covenant, and upon the theory of the appellant, Dunbar's covenants in the bond were wholly inoperative, so far as agreeing to convey anything valuable to Guzman is concerned. Evidently it was the intention of the parties to stipulate for something valuable—a conveyance of the title, which they supposed remained in Dunbar. We are satisfied that under this agreement the title remained in Dunbar. No title, therefore, passed to his assignees, or to the plaintiff, and there was a breach of condition on their part by failing to pay the purchase money according to the terms of the bond.

On still another ground the judgment of the court below should be sustained. A. T. Willson by quitclaim deed released to Truebody the lot in question on the 18th of November, 1854—subsequent to all of the judicial proceedings found in the record, which deed was duly recorded November 11, 1854. It is now insisted that the words "release" "all claims of the party of the first part against the lot," do not carry a claim to title, but only claims against it short of title in the nature of liens to secure money demands. This construc-

tion of the deed, when read in connection with the surrounding circumstances, seems to us preposterous. We should naturally suppose that Truebody, in yielding a large consideration in rents, damages and costs for the purpose of clearing up his title, while obtaining a release of other claims of the same party to the same land, would not fail to put an extinguisher upon a "claim against the lot" which he had pursued through years of expensive litigation, and which by unrecorded and undiscoverable assignments had repeatedly, as contended, eluded his grasp. And we have no doubt he thought he had at last succeeded. We also think the language of the deed accomplished the object, unless defeated by another conveyance which had not even yet and which did not for years afterward come to light—the conveyance to the plaintiff of October 29, 1851. But this deed was not recorded till April 17, 1860, since the commencement of this suit and nearly six years after the record of Truebody's conveyance from the same grantor, during all of which time Truebody was in quiet possession, making valuable improvements on the land. We have before held that a quitclaim deed passes any title which the grantor is at the time competent to convey, and we think such deeds within the provisions of the recording act, and that they will prevail in favor of purchasers for a valuable consideration without notice against prior unrecorded conveyances. With respect to this conveyance, the appellant makes some points on defects in the findings. But the findings were filed since the passage of the act of 1861, providing that a judgment shall not be reversed for want of findings, or for defects in findings. There was no exception by appellant as provided by the act for defects, and as we have often held under this act, where no exceptions for defects have been taken, it must be presumed that the facts found at the trial, if they had been stated, would support the judgment entered by the court.

We find no other material points of sufficient plausibility to require discussion.

Judgment affirmed.

I concur: Sanderson, C. J.

I concur in the judgment: Shafter, J.

RHODES, J.—I concur in the affirmance of the judgment upon all the grounds expressed in the opinion, except that in relation to the release executed by Willson to Truebody, and in respect to it, I am not prepared to say that its terms are sufficient to pass any title in or to the lot.