## C. LELAND AND OTHERS v. M. M. WILSON AND OTHERS.

1. In 1841, judgment was rendered against L. by a justice of the peace, and execution thereupon being in the hands of the constable, L. pointed out to the constable, by written designation, a certain tract of land for levy and sale under the execution, which land was the property of one W., who on the same date wrote and signed on the written designation the following agrement : " I hereby agree that the above property may be made use of for the purpose of the above advertisement." The constable sold the land, and in his deed referred to W.'s above agreement as a *power*, and annexed it as part of his deed, reciting further that he sold the property " by virtue of the judgments, executions, powers and proceedings before mentioned ;" which deed was proved and recorded about three years after the sale. The land lay outside of the constable's beat, and the law then in force disabled constables from acting outside of their beats in civil cases other than attachments. Plaintiffs claimed under the constable's deed, and brought trespass to try title against defendants who deraigned title from W., originating in his conveyance of a date subsequent to the registration of the constable's deed. *Held*, that W.'s agreement is not good as a *power*, being defective both in substance and in form ; nor could the constable, acting in his official capacity and not as the agent of W., have executed it as a power. Neither is it good as an *estoppel*, inasmuch as it was not good as a power nor as a deed, and was not a matter of record in a court of justice. And there being no evidence of fraud in fact, fraud cannot in this case be imputed to W. and his privies in estate on the ground that he stood by and permitted his property to be sold to an innocent purchaser for a valuable consideration ; because, the fact that the land was the property of W., and not that of the defendant in execution, was known both to the constable and to the purchaser, and the constable's deed to the purchaser conveys it as the property of W., and not as that of the defendant in execution. And finally, if it be conceded that W. agreed to the sale of his land to satisfy the execution against another, yet he could not thus have empowered the constable to make an illegal sale ; and as the land lay outside the constable's beat, that official could not legally have sold it under execution. From these considerations it follows that the constable's sale and deed did not convey the title to the land.

2. Three things are necessary to support a sheriff's or constable's deed, to-wit: a valid judgment, a valid execution, and a valid sale.

XXXIV—5

3. Much will be presumed in favor of ancient deeds ; and in favor of an ancient deed of a constable, when the judgment and execution cannot be found, and there is evidence that the justice's records to which they pertained have been lost, it seems that even the judgment and execution recited in the deed might, in a proper case and in default of proof, be supplied by presumption ; but it is believed that to allow a recovery of land in trespass to try title, when the plaintiff relies on a purchase at execution sale and is unable to produce either judgment or execution, would be carrying the doctrine of presumption too far.

4. The maxim *omnia præsumuntur recte* is applicable only to judicial proceedings, and not to mere ministerial acts.

5. The making of a deed by a sheriff is but a ministerial act ; and it has been held in this State that if the judgment and execution be valid and regular, the deed itself may be omitted in the evidence, if it be shown that the claimant under the deed purchased under the execution. The case of Fleming v. Powell, 2 Texas, 231, is cited by the court.

6. Recitals in a sheriff's deed are only matter of inducement, and cannot affect a stranger whose land the sheriff may have improperly attempted to sell.

7. When a judgment is a lien upon land, it is not necessary for an officer to go upon the land in order to seize and sell it under execution ; but when, as in this case, the judgment had no lien upon the land, the law is believed to be otherwise, and that the officer must carry his process to the premises in order to acquire the right to sell. But in this case the law in force at the time disabled the constable from taking possession of the land, or levying upon it, lying without his beat as it did ; and therefore all his acts in selling it under execution were devoid of legal authority, and passed no title to the purchaser.

APPEAL from Harris. Tried below before the Hon. James Masterson.

The facts of the case are sufficiently stated in the opinion of the court, where will also be found the former statutory provisions on which some of the rulings are predicated.

*Geo. Goldthwaite,* for the appellant.—It may be said, generally, that in order to sustain a conveyance, executed by an attorney under a power ; by an executor under a will ; by a sheriff un-

der an execution ; by a guardian or administrator, under an order of the court ; by a master or commissioner, under a decree in a court of chancery ; the power of attorney, the will, the judgment and the execution, the order or decree must be produced. (Jackson v. Roberts, 11 Wend. 425.) It matters not that it may be difficult for the purchaser to comply with such a rule,.it is his business to collect and preserve all the facts and muniments upon which the validity of his title depends. No purchaser is blameless who fails to preserve evidence so essential to the validity of his title. (Allen v. Smith, 1 Leigh., 231 ; Williams v. Peyton's Lessee, 4 Wheaton, 77 ; Varick v. Tallman, 2 Barb., 114, 115.) "The evidence upon which he is compelled to rely is usually preserved upon the records and among the files of some public office, and these records and files are always accessible to him. If there is any fact which the officers have neglected to insert in their records or returns, and the purchaser apprehends the death of his witnesses, the law has provided ample means by which he can perpetuate any fact material to the validity of his title. (Reed v. Morton, 6 Mo., 77, 78.) If the officers charged with the duty failed to record or return the proceedings, if the records become lost or destroyed, or the witnesses to the facts die, the purchaser has no just cause of complaint against the law—he stands in the attitude with all other suitors in courts of justice, who have a clear right, but no evidence to establish and support it. (Blackwell on Tax Titles, 2 Ed., 77.) The judgment and the execution must be produced.

Proof of the judgment and execution can never be dispensed with, and the recitals in the officer's deed is no evidence of their ever having existed.

A recital of the execution is no necessary part of a sheriff's deed. (Howard v. North, 5 Texas, 290 : Jackson v. Pratt, 10 John., 381.)

In Jackson v. Streeter, 5 Cowen, 53, in ejectment, there was a

misrecital of the judgment, and it was objected that the variance was fatal, but the objection was overruled. The court, on appeal, said the recital was no necessary part of the deed, and a variance would not be material, nor affect the validity of the sale, so long as there existed a sufficient power to warrant the sale.

One case in Connecticut went so far as to require as indispensable to the validity of deeds of administrators under an authority from the probate court, that they should set forth not merely the power in virtue of which the act was done, but the reasons or grounds upon which it was granted, as well as the proper exercise of it. (Lockwood v. Sturdevant, 6 Conn., 373.) But in a later case the court agreed in overruling that decision, so far as it related to the requisites of the deed, and one reason given by Daggett, C. J., why nothing more is requisite than that the deed of an executor, etc., should identify the order and exhibit the capacity in which the grantor acted is that this answers every valuable purpose; inasmuch as if a more extended recital were demanded it would not supersede the necessity of proving the facts. (Watson v. Watson, 10 Conn., 77.)

And no lapse of time will aid such recitals. No presumptions can be invoked for their assistance. Presumptions are never made for the purpose of upholding the acts of a special agent, whether appointed for public or private purposes; nor can such a presumption be made in favor of a ministerial officer, when recourse can be had to the authority under which he acted, and to the thing itself that is done under it; for that would be to substitute confidence in the officer for the due performance of his duty. In Varick v. Thompson, the court said, in commenting on the case of Williams v. Peyton's Lessee, 4 Wheaton, 77, "it was insisted on in the argument in that case, as it is here, that the deed being executed by a public officer was *prima facie* evidence that every act which ought to precede that deed had been performed, upon the principle that public officers are presumed to have done their

duty. The court, however, held that this principle had no application in a case where a statute prescribed the acts that were necessary to confer upon the officer the power to sell, and when by the sale a citizen was to be divested of his title to real estate. In such a case no presumption is to be entertained that the officers of the government have done their duty, but proof of every requisite step must be shown independently of the recitals of the deed of conveyance." (2 Barb., 116.)

Such a presumption has been indulged after long possession held under the deed; but only where the possession was long, open, notorious and exclusive.

Save the recitals in the constable's deed, not a single circumstance appears in evidence to aid such a presumption, but many on the contrary repel it. A deed by the constable dated April 6, 1841, and not acknowledged nor recorded until nineteenth of August, 1843—more than three years after its execution ! And this, a constable's deed, to a location not patented ! No steps taken to secure the patent ! Patent recorded by Wynns in 1846 ! Adverse deeds recorded under Wynns ! Not inventoried as assets of Peter Wilson's estate ! No taxes paid by plaintiff ! No possession taken ! And no claim made until after the death of Wilson, Lawrence, Wynns, Babcock, McGee and Busby, the constable ! Considering all these circumstances, does any favorable presumption arise in support of this constable deed ? I think not.

Thus far we have treated the case as though the land sold by the constable was the property of Lawrence, the defendant in the supposed executions. But such was not the fact. The land was the property of A. Wynns. An instrument of writing, however, is produced signed by Wynns, wherein he says : "I hereby agree that the above property may be made use of for the purpose of the above advertisement." It is claimed that this instrument is effectual as a power or authority to make the sale, and the deed to Wilson is supported by it, and if not good as a power, it is

good as an estoppel against Wynns and all in privity with him. We join issue on both propositions. As a power, it is ineffectual:

First.—Because taken by itself, or in connection with the instrument signed by Lawrence, which accompanied it; it is too vague, indefinite and uncertain to arrive at the intention of the signer, and is therefore wholly insufficient to divest him of his title to his land.

Second—Because the constable acted in his official capacity in making the sale and executing the deed, and not as the agent of Wynns in that behalf, and as a power from Wynns, it was never executed in fact.

Third—Because there was no grant of power or authority by Wynns to the constable contained in said paper ; it was but an assent, at most.

Fourth—Because the constable derives his power and authority from the law alone. The writ of execution is his warrant. It commands him to seize the goods and chattels, lands and tenements, of the defendant in execution. By law his authority is full, ample, complete. He can derive or accept none from an individual in the exercise of official functions. Consent cannot give authority to an officer; cannot give jurisdiction, and cannot cure defects or official irregularities. An officer cannot at the same moment, and in the execution of the same act, be both officer and private agent. If in this case his sale was good as constable, it was good without the authority of Wynns, and if not good as constable, Wynns did not clothe him with authority that made it good.

Fifth—Because the said instrument contains no words of conveyance, and was without consideration and seal, or scroll affixed by way of seal, as required by law concerning conveyances. (Paschal, article 997.)

As an estoppel it is not good. Because it is not good as a power. By reference to the deed made by the constable to Peter Wilson, (and it will be borne in mind that it is the deed under which

the plaintiffs claim, and its recitals consequently binding on them,) it will be seen that both Wilson and the constable relied upon said instrument as a power. Mark the recitations in the deed : "And whereas Archibald Wynns, partner in business with the said Lawrence, did also execute a power to the said constable to sell all his right, title, interest and claim to said property, which powers are annexed to and made part of this deed," etc. "Now, therefore, I, Daniel Busby, Constable for the county of Harris, by virtue of the judgments, executions, powers and proceedings," etc. There was no fraud intended, nor practiced. There was no concealment as to the true condition of the title. All parties knew the land belonged to Wynns, and the deed from the constable purports to convey it to the purchaser as such. Let us look further as to this supposed estoppel. To what did Wynns agree ? " I hereby agree that the above property may be made use of for the purpose of the above advertisement." He agreed, then, that there was. to be a levy and sale of the property—a legal levy and sale; the purpose was that the land was to be subjected to the *fi. fas.* then in the hands of Daniel Busby; and this object could only be accomplished by a legal levy and sale. A legal levy and sale can only be made by an officer clothed with legal authority to make the sale ; it follows, then, that if the constable who made the sale had no authority to make it, the property of Wynns was not made use of for the purpose that Wynns agreed it might be used ; and if not made use of for the purpose agreed to by Wynns, he, and those who claim under him, are not estopped from asserting the illegality of the proceedings and the nullity of the sale under them. We certainly have as much right to contest the validity of the levy and sale and establish its nullity, as we would if the executions had been against Wynns, and he himself had pointed out the land for levy. We do not think this proposition can be controverted. And this brings us to another point in the case which we think must be decisive against the plaintiffs. The defendants proved that the

league and labor of land in controversy were outside the city of Houston, and not in the same militia district or beat, and it was proved by A. P. Thompson, the plaintiff's witness, that at the time this pretended sale was made, Daniel Busby, the constable who made the said sale, resided in the city of Houston, and acted as constable in and for some one of the beats in said city.

The constable was incapacitated by law for want of jurisdiction.

"Legal incapacity cannot be removed by any representations, nor can there be an estoppel involved in the act to which the incapacity relates, that can take away that incapacity." (Keen v. Coleman, 39 Penn. St., 299.)

"If one having legal title to land induces another to purchase it under execution against him, he is not thereby estopped in a court of law from showing that the sale was void, and passed nothing to the purchaser." (Smith v. Mundy, 5 Ala., 182.)

"In order to estop a principal by the acts of an alleged agent, it must first be shown that his acts were within the scope of his authority." (Emmons v. Dowe, 2 Wis., 322.) Now, in this case, Busby, the constable, was not the agent of Wynns. The agreement was, by its own terms, that the property pointed out might be used for the purpose mentioned, that is, legally subjected to the executions. That was the purpose in view.

Estoppels are never favored. They are contrary to the spirit of our statutes of fraud and act concerning conveyances. "One can be barred by estoppel of his right to real estate only by deed or record, and not by an agreement not under seal." (Gerrish v. Proprietors of Union Wharf, 13 Shep., 384.)

"Where an execution debtor was present at a sale of land under the execution, and authorized the sheriff to sell more land than the execution gave him the right to sell, and the purchaser took the sheriff's, and refused the debtor's deed, it was held that the sheriff's sale was not legal, and that the debtor was not estopped

to assert his title to such excess." (Isaacs v. Gearheart, 12 B. Monr., 231.)

*Henderson & Whitfield*, for the appellees.—After the lapse of thirty years everything necessary to establish an ancient deed will be presumed to have been properly done; and in support of this position we refer to Colman v. Anderson, 10 Mass., 105; Gray v. Gardner, 3 Mass., 402; Prejepscut Proprietors v. Ranson, 14 Mass., 145; Mathews' Presumptive Ev., 25 to 37; Watrous v. McGrew, 16 Texas, 507; Stroud v. Springfield, 28 Texas, 649.

The constable's deed to Peter Wilson is full and perfect. It recites the sittings of the courts, the judgments, the issuance of executions, the levy pointed out by Lawrence with power to sell, and "that Archibald Wynns, partner in business with Lawrence, did also execute a power to the said constable to sell all his right, title and interest in said property; and which powers are annexed to and made part of this deed."

This deed was delivered to Peter Wilson, and was duly recorded. Nine years after the record of this deed appellants became the purchaser, with full notice of the deed to Peter Wilson on record.

For the sufficiency of this deed we refer to Wormack v. Wormack, 8 Texas, 397; Miller v. Alexander, 8 Texas, 36.

"In proof of title under a sheriff's sale, the copy of the judgment and so much of the record as shows an appearance of the parties, or service of the process on the defendant is sufficient without a complete transcript." (McGuire v. Kouns, 7 Monroe, 386.)

"It is sufficient evidence of a judgment recovered before a justice who is since dead for the party to prove the death of the justice, and to produce the original minutes in the handwriting of the justice." (Baldwin v. Perry, 13 John., 430.)

"The recital of the execution in a sheriff's deed is not neces-

sary, and does not affect the validity of the deed." (Jackson v. Pratt, 10 John., 381.)

It is charged that the constable who made the levy and sale had no authority to do so ; that it was necessary for him to leave the militia beat for which he was elected, in order to levy upon the land. Not at all. An officer is not required to take corporeal possession of land when levied upon. The law required that all sales of land under execution should be at the court house door, on the first Tuesday in each month. Here is a sale made by an officer in his own beat, at the court house, at the proper time ; and that too under and by authority in writing from the defendant in execution.

Mr. Broom, in his Legal Maxims, 729, says " that a man acting in a public capacity is presumed to be duly authorized so to do."

And our Supreme Court, in the case of Houston v. Perry & Williams, 3 Texas, 390, says : " The act of an officer having competent authority may be presumed to be in conformity with law."

" Everything is presumed to be rightly and duly performed until the contrary is shown." (Broom's Legal Maxims, 729.)

Wynns, who held the legal title to the land, not only stood by and acquiesced in the sale, but gave written authority to the officer to sell; and we assert that he and all claiming under him are estopped from now asserting any claim they may have to the land.

" A person looking on and suffering another to purchase and expend money on land, without disclosing or making known his claim to the land, will not be permitted afterwards to assert his legal title against such innocent purchaser." (Wendell v. Van Rensselaer, 1 John. Ch., 355; Brothers v. Porter, 6 B. Monroe, 113.)

" A person having the legal title, who acquiesces in the sale of land, is estopped from claiming." (Storrs v. Barker, 6 John. Ch., 166.)

Wynn was estopped from claiming the land after the sale, and the doctrine is now well settled that "what bound a former owner's estate binds any one who comes to the same estate after him." (Young v. Buckingham, 5 Ohio, 485; Hinton v. McNeil, 5 Ohio, 509.)

WALKER, J.—In 1841, on the twenty-third day of February, William Lawrence confessed a judgment before James McGee, a justice of the peace for Harris county, for the sum of $24, in favor of S. G. Powell. Daniel Busby was a constable, elected for one of the military beats of Harris county.

On the same day Lawrence pointed out a league and labor of land, described as the headright of John W. Baker, assigned to A. Wynns. Lawrence gave directions to Busby to sell the land without appraisement, on twenty days notice, for cash. On the same paper given by Lawrence to Busby, and of the same date, Wynns signed an agreement which reads thus: "I agree that the above property may be made use of for the purpose of the above advertisement." This is signed by A. Wynns, and witnessed by D. Busby.

Upon the validity of these proceedings the appellees count for title, and offer a deed from Daniel Busby, constable of Harris county, to Peter Wilson their ancestor.

It was in evidence that the records of justices' courts, and particularly those of McGee and Babcock, were carelessly kept; that their papers and dockets were scattered and destroyed.

The recitals in the deed from Busby to Wilson call for certain judgments and executions, which should have been found upon the dockets of these justices, but, after diligent search, could not be found. It was proved that one hundred dollars, the consideration named in the deed, was a fair price for the land at the time it was sold.

It was also in evidence that Daniel Busby held and exercised

the office of constable in the city of Houston, where he resided at the time of the sale.

The deed, with all its recitals, was admitted in evidence. The defendants introduced a patent for the land to A. Wynns; also a deed from A. Wynns to John Levi, and also a deed from Levi to Charles Leland, and receipts for taxes paid upon the land.

The records of the County Court of Harris county were introduced to show that in 1839 the county was divided into military districts, and that the land in controversy did not lie within the district where Busby lived and exercised his office of constable.

It is said in Miller v. Alexander, 8 Texas, 36, "that the bid and payment of the purchase money at an execution sale constitute the purchaser's right, and the deed is merely evidence of that right."

If the deed be defective—if it have neither seal nor scroll—it is nevertheless admissible in evidence, even in a collateral proceeding, as conducing to show that the purchaser at the sale had acquired the equitable title to the land.

But the deed in this case is not defective in its execution; but the difficult question for solution here arises, did it convey the land in question? Though the land sold did lie without the ministerial territory, the parties interested, Lawrence, Powell, and Wynns, might have authorized him to sell it, or any other auctioneer or agent; they might have gone further and Wynns might have authorized him to convey it to the purchaser. But the question is, did he do it?—and we think the question can be answered only in the negative. The law did not authorize Busby to seize property on execution beyond his ministerial territory; it did not authorize him to sell property so seized. Three things were necessary to support his deed; a valid judgment, a valid execution, and a valid sale.

Following the authority in Waters and others v. McGrew and others, 16 Texas, 506, and Stroud v. Springfield, 28 Texas, 649,

we might presume much in favor of this deed on account of its antiquity; perhaps we are bound to presume the judgments and the executions recited in the deed.   But we can go no further in face of the facts proven in this case; for, upon the presumption that the parties did agree that he should sell the land, he could only sell it as any private individual could have done, if duly authorized by Wynns so to do.   But he could go no further; and to have made the transaction complete, Wynns should himself have deeded the land to Wilson, the purchaser.   We have said we might, perhaps, in favor of an ancient deed, presume that there was a valid judgment and a valid execution; but we think, at the same time, it would be going too far to allow a plaintiff in ejectment to recover, who counts upon a sheriff's deed, and is unable to produce either judgment or execution.

Not deeming this question, however, material to the decision of the case, we nevertheless fortify our opinion by the authorities, which we find to be carefully cited in the appellants' brief. (Blackwell on Tax Titles, second edition, 76; Hamilton v. Adams, 2 Murphey, 162; Jackson v. Roberts, 11 Wend., 425 to 440; Natches v. Minor, 4 Smedes & Mar., 602, 631; 10 Smedes & Mar., 246; Smith v. Morrman, 1 Monroe, 154; Dun v. Merriwether, 1 A. K. Marsh., 158; Terry v. Bleight, 3 Monroe, 270; Stevens v. Robertson, Id., 97; Weyand v. Tipton, 5 Serg. & Rawle, 332; Bowen v. Bell, 20 John., 338; Hinman v. Pope, 1 Gilman, 131; Smith v. State, 13 Smedes & Mar., 140; Dufor v. Comfrane, 11 Mart., 607; Wheaton v. Sexton, 4 Wheaton, 503; Ware v. Bradford, 2 Ala., 676; McEntyre v. Durham, 7 Iredell, 151.)

The making of a deed by a sheriff is but a ministerial act; and if the judgment and execution be valid and regular, the deed itself may be omitted in the evidence, if it be shown that the party claiming under the deed purchased under the execution. (See Fleming v. Powell, 2 Texas, 231.)   A sheriff's deed must

be treated as a nullity without proof of his power to sell; and unless it is supported by the judgment and execution it will convey no title. (See Wofford v. McKinna, 23 Texas, 43.) This case appears to be decisive of the one at bar. Wheeler, C. J., in deciding the case, says : " The difficulty in this class of titles is in proving the regularity of the proceedings necessary to confer the power, which are conditions precedent to its exercise. But it does not follow that the conveyance is not a deed, because the power of the agent is not produced ; the production of the power is necessary to give effect to the deed and render it operative to pass the title, but not to constitute it a deed. A sheriff's deed is inoperative without proof of his power to sell; it is no evidence of title without the production of the judgment and execution. And so of every conveyance executed by an agent or attorney in fact; the production of the power is necessary to complete the evidence of title."

A sheriff, by the recitals in his deed, cannot bind a party whose land he may have improperly sold; the recitals are to be regarded only as inducement. (Howard v. North, 5 Texas, 290; Jackson v. Pratt, 10 Johnson, 381.) The maxim *omnia præsumuntur recte* is only applicable to the record of judicial proceedings, and is not to be applied to the exercise of ministerial functions. In the case of Jackson v. Roberts' executors, 11 Wend., 433, the court say : " We may well inquire whether a sheriff has power to make evidence in favor of his own acts against others, which shall be conclusive against their rights. If it is evidence against a stranger, of what is it evidence? Of all the facts necessary to make out the grantee's title, or part only ? If the former, it must be evidence of judgment and execution, and of the debtor's title to the premises; *yet it is well settled that it is not evidence of these things, but they must be proved aliunde.* The sheriff sets forth in his deed that he sold, by virtue of an execution, the property of the defendant in that suit. If his *dictum* is con-

clusive evidence of this, I can conceive of no safeguard against sales on pretended or forged executions "

But the appellees insist that Wynns's agreement, which we will here again quote—" I hereby agree that the above property may be made use of for the purpose of the above advertisement"—must be taken as a power au+horizing the sale of the land, or it must operate as an *estoppel* against Wynns and all claiming in privity with him.

As a power, it uses no words of bargain, sale or conveyance; it is without consideration and without a seal. (See Paschal's Digest, article 997.) The constable could not have regarded it as a power, for he acted in his official capacity, and in no way as the agent, auctioneer, attorney, broker, or proxy of Wynns.

The constable is an officer of the law, and the execution, if he had one, was the warrant for his ministerial act.

As an estoppel the instrument was not good, for the simple reason that it was not good as a power or deed, nor was it matter of record in a court of justice.

But it is evident from the recitals in the deed that both the constable and the purchaser treated it as a power.

Another inquiry arises: Are Wynns and those in privity with him chargeable with fraud, as one would be who stands by in silence and sees his property sold to an innocent purchaser for a valuable consideration ?

We cannot see wherein there was any fraud intended or practiced. It does not indeed appear whether the property was sold as the property of Wynns or Lawrence. The constable, Busby, must have known that the land in fact belonged to Wynns, and this fact is conclusively brought home to Wilson, the purchaser, by the recitals in his deed. In fact the deed purports to convey land belonging to Wynns and not to Lawrence. But it may be said that Wynns agreed that the land should be sold for Lawrence's debt. Suppose that we consider that he did thus agree, we will

only hold that he agreed to a legal sale, for, if he had even intended otherwise, he could not have invested Busby with power to make an illegal sale, and the sale in this case was not legal. See the eighth section of an act to repeal and amend certain parts or portions of an act entitled, "An act concerning executions," approved December 22, 1840 :

" Be it enacted, That a constable shall not have power to act in civil cases out of the beat to which he belongs, except in cases of attachment; provided, that the constable residing in incorporated towns shall be authorized to act within the limits of said towns."

This act restricts the constable, except in cases of attachment, when executing civil process, to the territorial limits of his beat, and this too is *an act concerning executions.* We admit that it is not necessary for the sheriff or constable to go upon the land upon which there was a judgment lien; but the judgments of the justices of the peace do not operate as a lien until they are taken up to a court of record.

The judgment binds the land, when rendered in a court of record, within the county where it is rendered. The land may be said to be in the custody of the law, and it is not necessary for the sheriff or constable to take actual *pedal* possession, but we believe it to be otherwise where the lands are not under judgment lien, and the officer must carry his execution to the premises, and by virtue of it alone he acquires a right under the law to sell. (See Wood v. Colvin, 5 Hill, N. Y., 230; Catlin v. Jackson, 8 Johnson, 546 ; Kent v. Roberts, 2 Story, 603.)

But the constable in this case had no power to go upon the land to take *pedal* possession and make his levy ; and we therefore hold that all his acts, wherein he transcended his legal authority, are void, and conferred no title on Wilson, the purchaser. The judgment of the district court is reversed, and the cause remanded.

Reversed and remanded.