### ULYSSES GRANDJEAN v. W. R. STORY.

#### (No. 319.)

PLEADING.— It is not necessary to deny every allegation in the petition to introduce testimony to the contrary.  The defendant pleaded that the property sued for was a homestead and that the purchase money had been paid and no lien existed.  *Held*, it was not necessary to contradict the averment that it should have been denied.

EVIDENCE.— Objection was taken to the introduction of a sheriff's deed because the execution was not proved.  Search was made in the clerk's office but it could not be found; the clerk who issued the execution swore that he had issued it; the execution docket was introduced showing the date of its issuance and the sheriff's return.  *Held*, that this was sufficient to authorize its introduction.

APPEAL from Bexar county.    Opinion by QUINAN, J.

STATEMENT.— The following statement from the appellees' brief is a fair statement of the nature of this action:

This was an action of trespass by W. R. Story against Anton Horn, commenced January 21, 1874.

On the 30th of the same month the defendant filed a general demurrer and general denial, with the plea of "not guilty."

On April 3, 1874, Ulysses Grandjean makes himself a party defendant, alleging himself to be the owner of the

land described in the petition, and says further that he purchased the same from John G. Ward and wife; that at the time of such purchase and long anterior thereto, the said land was the permanent homestead of his grantors; that it was free from incumbrances; that Story knew that it was the homestead of Ward and wife, and that he paid the purchase money therefor. He prays to be quieted in his title and cancellation of Story's claim.

On the same day Horn disclaims ownership, pleads not guilty, and says that he was acting under a contract with Grandjean.

The plaintiff thereupon, and on the same day, amends his original petition, alleging himself to be the owner in fee of the lot or land described in his original petition; that he is entitled to the possession of the same; that he has been forcibly and fraudulently deprived thereof, and prays judgment for the land, for writ of possession, costs and damages.

By these subsequent pleadings, what was at first an action of trespass *quare clausum fregit* became an action of trespass to title, was so treated by the court and parties, and as such tried; when on May 28, 1874, a verdict was rendered for the plaintiff and a judgment entered that the plaintiff, Story, recover from the defendants, Horn and Grandjean, the property mentioned and described in the pleadings (describing the land sued for), that he have a writ of possession, and for $50 and costs. As the judgment of $50 for damages is rendered against both defendants, and whereas it is, perhaps, not perfectly clear that both are jointly liable, we beg leave to remit that part of the judgment and to file a *remittitur* for the amount.

Story deraigns title to the land as follows:

Newell, Gatewood & Co. recovered a judgment against Ward, Briggs & Co. for $1,773.52. Upon this judgment an execution was issued which was levied April 22, 1873, on the piece of land in controversy, as the property of J. G. Ward, one of the firm of Ward, Briggs & Co. The

land was sold by the sheriff of Bexar county, purchased at the sheriff's sale by W. R. Story, and a deed therefor executed by the sheriff to Story, dated June 3, 1873.

The execution, by virtue of which this sale was made, was lost, and secondary proof was offered and admitted of it and the return on it.

The defendant claimed title under a deed from John G. Ward, by his agent, Manuela Ward, his wife, dated October 9, 1873. Grandjean placed Anton Horn in possession, who removed a small house from the premises, and hence he was made a party to the suit.

Grandjean brings the case here by writ of error.

What further is necessary to a proper understanding of the case may be seen from the opinion. The chief contest was whether the property was the homestead of Ward and wife and so not subject to execution. I have given a condensed statement of the material testimony of the witnesses upon this subject.

OPINION.— The assignments of error in this case are of a character so general and sweeping as to require no notice of them *seriatim*. They are totally wanting in that definiteness of specification necessary to inform us of the very errors complained of.

We will consider only those points made by the appellants in their brief.

It is objected that the defendant's demurrer was improperly overruled, but there is nothing in the record to show that the attention of the court was called to it, or that it was in fact overruled, and therefore must be considered as waived.

Bills of exception are reserved to the introduction of testimony upon the subject of Ward's residence, condition and insolvency, on the ground that there was no allegation to support it in the plaintiff's petition.

This was an action of trespass to try title. The defendant pleaded that the property was the homestead of Ward

and wife, from whom he purchased it in good faith; that
the purchase money had been paid, and that there were no
liens upon the land. It was not necessary that the plaint-
iff should reply to these allegations in order to be permit-
ted to introduce proof in rebuttal of them. The defendant
having set up that the property had been the homestead of
Ward and wife, it was certainly proper to admit whatever
proof might bear upon that question and tend to show that
it was not, as that the claim of homestead was not made
in good faith; that it was mere pretense; that the occupa-
tion of it was temporary in its character, not with a view
of maintaining it as a homestead, but solely to screen it
from creditors.

Objection is also made to the introduction in testimony
of the sheriff's deed to Story for the property in contro-
versy, without proving the execution upon which it was
sold. There was proof that search had been unsuccessfully
made in the clerk's office, where the execution should be,
for it, but that it could not be found. The clerk who is-
sued the execution swore that he had issued it. The exe-
cution docket was produced, showing the date of its issu-
ance and a copy of the sheriff's return thereon. This proof
was submitted to the judge, and we think was sufficient
proof of the execution to go to the jury and to warrant the
introduction of the sheriff's deed. Objection is also made
for want of the original return. Story's title to the land
depended upon a valid judgment and execution, and levy
and sale thereunder, and payment of the money. As evi-
dence of the levy and sale, either the return of the officer
or his deed is competent testimony. A deed is not neces-
sary if there be a return, nor is a return essential if there
be a conveyance. Leland v. Wilson, 34 Tex., 91; Fleming
v. Powell, 2 Tex., 225. "The purchaser has no control over
the officer, and therefore is not prejudiced by a deficient or
incorrect return, nor by the entire absence of any return
whatever." Freeman on Ex., 341. "The recitals in the
sheriff's deed of his levy and sale are entitled to the same

effect as instruments of evidence as the sheriff's return." Higher *v.* Peck, 2 Cal., 288. As the sheriff's deed was read in this case the return was not necessary to be produced.

The only objection made to the judge's charge which points out with any distinctness the error complained of is the second assignment, " that the court erred in its fifth charge in using the words ' good faith.' "

The whole paragraph is: "If you believe, from the evidence, that at the date of the sheriff's sale to Story the place was occupied by Mrs. Ward and her family, in good faith, as the family homestead, you will find for the defendant."

The meaning of this is that the occupancy must be with the purpose of using the place as a homestead, not a mere pretense and without any intention of holding and keeping it as a homestead. It is the homestead that is protected by law, not the casual or temporary residence of the party, taken up without the design of making it the homestead, but perhaps with a view to throw hindrances in the way of creditors. The charge is more favorable to the defendant than the law warrants. It restricted the inquiry of the jury to the character of Mrs. Ward's occupancy at the time of the sale. This was doubtless following the rule in Stone *v.* Darnell, 20 Tex., 11, and the qualifying words, "good faith," are used in accordance with what is said in that case by Hemphill, C. J.: "Where one removes from his former homestead and fixes his residence on a portion of his lands upon which there had been a levy, such proceeding would be regarded as fraudulent, which might be shown by the purchaser at the sheriff's sale, and would protect his title against the claim of homestead thus fraudulently acquired."

The resumption of the occupancy of the land in the present case by Mrs. Ward is shown to have been between the levy and the sale, and as the court had made the character of her occupancy at the day of sale the material question, it was not improper to have added the qualification

of good faith. It is to be observed, however, that Stone v. Darnell has been overruled, and that Mrs. Ward could acquire, after the levy, no homestead right in the land, had she acted with the best intentions. Baird v. Trice, 51 Tex.; 560.

The main contention of the appellant, however, is that the verdict of the jury is against the evidence; that the proof establishes that the premises in controversy were the homestead of Mrs. Ward at and before the levy and sale under execution.

It is by no means clear to us that this is the case. Ward lived in San Antonio when he purchased the place in 1862. It became known as the Ward *rancho;* Ward kept his stock there. Some of the witnesses stated that after he purchased the place he moved out there with his family, but it is not shown how long he remained, whether for a month, or longer; others who were well acquainted with him say that he never lived there. Mr. Ruelas (Ward's father-in-law) lived on the place and took care of the property. It seems to be uncontradicted that during the war and up to April, 1873, Ward was doing business in town, keeping a livery-stable and an accommodation line; he also kept a store and a hotel. In 1866 or 1867 he was applied to by one wanting to purchase the *rancho* and he declined to sell, stating that he wanted to make a pasture. It appears that Mrs. Ward and her children were frequently at the *rancho.* Horn, a witness for the defendant, and who says he lived within five hundred yards of the place and has known it for seventeen years, says that Ward's father-in-law had charge of the place for Ward; says Mrs. Ward was at the place frequently, nearly every week; that in April, 1873, Ward went away and then Mrs. Ward and her children moved out there and lived on the place; Mr. Ruelas also living there until she sold it. But this witness says nothing of Ward himself living there at any time. The sale by her was made under a power of attorney from her husband, dated in August, 1873. He went over to Mexico, as he

said times were dull, to make money and return. There is no reason to suspect an abandonment by him of his wife.

Now, it was a question fairly for the jury to determine, under all the testimony, whether Ward and his wife had established their homestead at the *rancho*. There was nothing in any charge of the judge to lead them astray or warp their minds in determining the question. They have, by their verdict, found against the homestead right in the premises, and we cannot undertake to say that, weighing the testimony and hearing and seeing the witnesses, their decision is manifestly erroneous. The judge who presided at the trial was satisfied with it, and there is no such preponderance either way as would authorize us to disturb it. Courts and juries are always liberally disposed in extending the beneficent provisions of our homestead laws for the protection of families, but it ought reasonably to appear that the homestead, in fact, existed. Casual visits to the *rancho* during the long period from 1862 to 1873, or stoppages there more or less prolonged or frequent with the children, at their grandfather's, while the business and employments of the owner were at a distance, requiring daily, nightly, continuous attention, might well be held insufficient proof of the dedication of it as the homestead.

It is unnecessary to discuss the questions presented by the briefs as to the effect of Mrs. Ward's residence upon the land after the levy and at the time of the sale, because, in our view of the law as declared in Baird *v.* Trice, she could acquire, after the levy, no new right of homestead. Whether such could be acquired after the attachment of the judgment lien need not be considered until a case is presented which requires it.

Judgment affirmed, subject to a credit of $50, the damages remitted by defendant in error.